(Decided 12th March, 1875.)

HENRY C. GRABENHORST *vs.* JEREMIAH NICODEMUS, and others, surviving partners of HEIM, NICODEMUS & Co.

*Construction of a Written agreement—Constructive Eviction—Implied obligation on the part of a Landlord.*

On the 15th of February, 1871, an agreement in writing was entered into between N. and G. whereby N. the owner of a certain distillery and premises, agreed that G. might during the year purchase the same for the sum of $5000; and G. agreed and obliged himself to pay to N. for the privilege the sum of $1000, at the expiration of the year, if he did not purchase the property for the aforesaid sum of $5000; and if he should complete the purchase within the year, then the $1000 should be considered as included in the purchase money and should not be required of him. HELD:

That the contract between the parties was not a bargain and sale of the property at $5000, but an obligation on the part of N. to sell to G. at that price, with the privilege to him to make the purchase or not, as he might determine, within the year; and an agreement on the part of G. to pay for this privilege $1000 in the event of his declining to make the purchase. G. was under no obligation to buy; but N. was precluded from selling to any one else during the year.

N. leased to G. certain property to be used as a distillery, at $125 a month, payable monthly. As a preliminary to the use of the distillery, it was necessary for the lessee to file with the United States collector the written consent of the lessor as the owner in fee of the property, in accordance with

Grabenhorst *vs.* Nicodemus, *et al.*

section 3262, of Title XXXV, of the Revised Statutes of the United States, unless the Commissioner authorized the collector to accept the bond of the lessee in lieu of such written consent. The lessor refused to give such written consent, and in consequence thereof the lessee was prevented from running the distillery and the property remained idle. In an action by the lessor to recover the rent of the premises, it was HELD:

1st. That the refusal of the lessor to give his written consent to the lessee, as required by law, to enable him to carry on the business for which the premises were leased, discharged the lessee from all obligation to pay the rent— the default of the lessor in this particular amounting to "constructive eviction," so far as the legitimate employment of the property was concerned.

2nd. That the obligation of the lessor to give his consent, as required by the law, was to be implied as a necessary incident to the lease, as fully as if there had been inserted a positive stipulation to that effect.

APPEAL from the Court of Common Pleas.

The appellees sued the appellant in the Circuit Court for Baltimore County, to recover the sum of $1000, as the consideration for the privilege given to him of purchasing a certain distillery and premises, within a time specified ; and also the sum of $125 per month rent for the same property. The case, on the suggestion and affidavit of the defendant was removed to the Court of Common Pleas, where his pleas were filed.

*First Exception.*—The plaintiffs to maintain the issue on their part offered in evidence a lease dated the 15th of February, 1871, whereby they leased to the defendant the distillery and premises described in a deed particularly referred to, for the term of one year, beginning on the day of the date of the lease and ending on the 14th of February, 1872, at the rent of $125 per month, payable monthly on the first day of each month. It was agreed and understood that all repairs and improvements which the lessee might require, he should do at his own expense, and that all repairs, improvements and fixtures and machinery which he should introduce into or put upon the distillery or premises should revert to, and become the property of,

the lessors upon the termination of the lease, without cost to them.

The plaintiffs then proved by Charles G. Heim that the defendant entered into possession of the leased premises and remained in possession during the year mentioned in the lease, and had paid no rent therefor. They also offered in evidence an agreement between themselves and the defendant, dated the 15th of February, 1871, the execution of which was admitted, whereby the plaintiffs agreed that the defendant might during the year for which the property was leased, and not afterwards, purchase the same for $5000, provided the title was satisfactory; and the defendant agreed and bound himself to pay to the plaintiffs for the privilege, the sum of $1000, at the expiration of the year, if he did not purchase the property for the sum of $5000. If, however, he should complete the purchase within the year, then the $1000 was to be considered as included in the said purchase money of $5000, and should not be required of him. It was also agreed, that if the defendant should complete the purchase, the rent should cease from the day when the sale should be completed, and the purchase money fully settled.

The plaintiffs further proved by the witness Heim that the $1000 mentioned in the agreement had not been paid. On cross-examination this witness proved that the plaintiffs received $5000 from Mr. John W. Garrett for the property mentioned in the lease. On re-examination the witness proved that the money was paid on or about the 1st of March, 1873. The plaintiffs then offered in evidence an agreement dated the 16th of January, 1873, signed by themselves, certifying that they had sold the property to the defendant for $5000, provided he paid the sum of $2000 on or before the 1st of March, 1873, and gave satisfactory security for the balance. There was an endorsement on this paper extending the time of payment to the 7th of March, 1873.

The defendant then to maintain the issue on his part, offered in evidence an agreement made on the 16th of January, 1873, to sell to the defendant the distillery property, and that the plaintiffs did not waive any right to the amount of rent and privilege claimed by them to be due by the defendant under a prior agreement. The defendant then proved by himself that he sold the distillery property to Mr. Garrett for $5000, but did not receive the money, it was paid to the plaintiffs; he then offered to prove also by himself, subject to exception, that after the time named in the agreement, which gave him the privilege of purchasing the property, had expired, he went to see the plaintiffs and they agreed to extend the time for the purchase of the property by the witness—they were anxious to sell the property, and on the last of July, 1873, they told him they would sell the property to him under the agreement. The plaintiffs objected to this evidence, and the Court (GAREY, J.,) sustained the objection; the defendant excepted.

*Second Exception.*—The defendant then offered to prove by himself that at the time when the lease offered in evidence in this cause was executed, the distillery therein mentioned was not in running order; that he promised to repair it, and spent two or three thousand dollars in the repairing thereof; that after such repairs were made he was ready to run the distillery—the plaintiffs refused to sign the consent as owners of the fee which is required by the Internal Revenue Laws of the United States, before the defendant could procure the necessary papers to run the same as a distillery, and in consequence of such refusal he was prevented from running the same as a distillery, and the property therefore continued idle; that the defendant several times applied to the plaintiffs to sign such consent, but they refused so to do.

And also offered to prove by Robert G. King, that he is one of the Assistant Assessors of Internal Revenue for the

District, in which is situated the distillery, formerly occupied by the defendant; that sometime in the year 1871 or 1872, the defendant applied to the assessor to furnish him with such papers as were required by law, to allow him to run the aforesaid distillery; that among such papers, was one, by which Jeremiah Nicodemus and others, the owners of the fee, were required to give their consent to the use of the property for distilling purposes, which were never executed by them, and thereupon the necessary papers were never delivered to the defendant.

To the evidence so offered by the defendant, the plaintiffs objected, and the Court sustained the objection. The defendant thereupon excepted.

*Third Exception.*—The plaintiffs offered the following prayers:

1. If the jury shall find the execution by the plaintiffs and defendant of the lease, dated 15th of February, 1871, offered in evidence, and that the defendant entered into possession under the same, and that no part of the rent mentioned in said lease has been paid, then the plaintiffs are entitled to recover the rent therein stipulated, together with interest upon each sum of $125, from the time when it was payable.

2. If the jury find the execution by the plaintiffs and defendant of the agreement, dated the 15th of February, 1871, and that the defendant did not purchase the property therein mentioned at any time during the period of one year thereafter, and that he has not paid the sum of one thousand dollars, then the plaintiffs are entitled to recover the said sum of $1000, together with interest thereon from the 16th of February, 1872.

The defendant offered six prayers, which need not be reported. The Court granted the prayers of the plaintiffs, and refused those of the defendant. To this ruling of the Court the defendant excepted, and the verdict and judgment being for the plaintiffs, he appealed.

The cause was argued before Bartol, C. J., Stewart, Grason, Miller and Alvey, J.

*Fred. C. Cook* and *Samuel Snowden,* for the appellant.

The evidence offered by the defendant, and contained in the first bill of exception, should have been admitted. The object of the plaintiffs was to enforce a penalty for non-payment of the purchase money at the time named in the agreement for sale, and it was perfectly competent for the defendant to show by parol evidence that the time fixed for performance by the terms of the agreement had been extended, and therefore, the appellees were not entitled to recover the penalty of the agreement.   Even when time is of the essence of the contract, and the contract is required by the Statute of Frauds to be in writing, a strict compliance may be waived by parol by the vendor.   *Reed vs. Chambers,* 6 *G. & J.,* 490 ; *Friess vs. Rider,* 24 *N. Y.,* 367 ; *Stone vs. Sprague,* 20 *Barb.,* 509 ; *Deshazo vs. Lewis,* 5 *Stew. & Porter,* 91 ; *Franklin vs. Long,* 7 *G. & J.,* 407 ; *Mayor of N. Y. vs. Butler,* 1 *Barb.,* 325.

The circumstances of the case show that it was the intention of the parties that the sum of $1000, to be paid by Grabenhorst under the agreement of the 15th of February, 1871, should be a security for the faithful performance of the contract by him, and was not, therefore, liquidated damages, but a penalty.   *Dyer vs. Dorsey,* 1 *G. & J.,* 440 ; *Tayloe vs. Sandiford,* 7 *Wheat.,* 13.   And in assessing the damages the plaintiffs were entitled to recover only such damages as the jury should find from the evidence they had actually suffered, by reason of the failure of the appellant to pay the money within the time limited by the agreement.   *Sedgwick on Dam.,* (6th *Ed.,*) t. p. 487 *and* 492; *Spencer vs. Tilden,* 5 *Cowen,* 144; *Betts vs. Burch,* 4 *H. & N.,* 506; *Chase vs. Allen,* 13 *Gray,* 42; *Leggett vs. Mut. L. Ins. Co.,* 53 *N. Y.,* 394; *Lowe vs. Peers,* 4 *Burr.,* 2228; *Hurst vs. Hurst,* 4 *Exch.,* 571;

*Hoag vs. McGinnis,* 22 *Wend.,* 163 ; *Henderson vs. Cansler,* 65 *N. C.,* 542 ; 3 *Pars. on Con.,* 159, *&c.*

It is inconceivable that Grabenhorst would absolutely bind himself to pay $1000 for non-compliance with the agreement to purchase the land, when, from the omission or failure to purchase, no injury would necessarily result to the appellees. *Ricketson vs. Richardson,* 19 *Cal.,* 330. The Court, therefore, erred in granting the appellees' second prayer, which instructed the jury to find the $1000 for the plaintiff as liquidated damages.

The failure by the appellees to demand the performance of the agreement, at the time when it should have been performed, prevented their right to claim a forfeiture, and their acceptance afterwards of the performance of the same agreement, was an accord and satisfaction of the original agreement, and the one thousand dollars sued for in this case has been actually paid to the appellees. The acceptance of the money for the purchase of the land was a waiver of all objection on the ground of delay, and gave to the appellant all the benefit of the contract, which he would have had by payment at the time fixed by the contract. *Addison on Con.,* (*6th Ed.,*) 996 *and* 1099 ; *Williams vs. Champion,* 6 *Ohio,* 170 ; *Porter vs. Stewart,* 1 *Verm.,* 44 ; *Farley vs. Farley,* 14 *Ind.,* 331 ; *Warren vs. Mains,* 7 *Johns.,* 476 ; *Lawrence vs. Dole,* 11 *Vt.,* 549 ; *Hargrave vs. Conroy,* 4 *Green,* (*N. J.,*) 281 ; *Onderdonk vs. Gray,* 4 *N. J.,* 65 ; *Webster vs. Tibbitts,* 19 *Wis.,* 438 ; *Hunter vs. Daniel,* 4 *Hare,* 420.

The agreement of the 15th February, 1871, was to have been performed within one year from its date. One of the conditions of the agreement was that if Grabenhorst purchased within that time, the sum of $1000 should be considered or included in the purchase money of $5000 ; he did not purchase within that time, nor did the plaintiffs make any demand upon him at the expiration of the time fixed by the agreement; on the contrary, they allowed

him to hold as tenant under the lease, dated at the same time with the agreement, and gave him no notice of their intention to claim a forfeiture of the $1000, and on the 16th of January, 1873, they entered into another agreement with him for the same price, ($5000,) and fixing the terms of payment, which agreement was executed and the money actually paid to the appellees. By the receipt of this money, the sum of $1000 was actually paid to them, according to the provisions of the agreement of the 16th February, 1871, which was thereby finally settled, and such settlement enured to the benefit of Grabenhorst, to the same extent, and operated in the same manner, as if he had paid the $5000 within the time limited by the agreement. As, therefore, the effect of the payment of the consideration money for the land and its acceptance by the appellee, was to satisfy the contract of the 15th February, 1871, the appellees had no rights under that agreement which they could reserve, and the agreement therefore, that they did not waive any right to amount of rent and privilege *claimed by them to be due*, could not have the effect of giving them a right to recover a sum of money already paid.

*D. S. Briscoe* and *William A. Fisher*, for the appellees.

The evidence offered by the defendant, embraced in the first and second bills of exception, was properly rejected by the Court, because it was an offer without proof of fraud, mistake or surprise, to contradict sealed instruments, by parol testimony. By the lease of 15th of February, 1871, and the agreement of the same date, for the privilege of purchasing the distillery property, the defendant was concluded ; the fact and extent of his responsibility was certainly and accurately ascertained, and the proof of the execution of those instruments, or the admission thereof by the defendant was an estoppel of the denial of their conditions and effect, as also of the proof by parol

of other conditions inconsistent with said lease and agree-ment. *Howard vs. Rogers*, 4 *H. & J.*, 281; *Woollam vs. Hearn*, 7 *Vesey*, 218; *Wesley vs. Thomas*, 6 *H. & J.*, 28; *Townshend vs. Strangroom*, 6 *Vesey*, 328; *Irnham vs. Child*, 1 *Brown's Ch.*, 92; 1 *Story's Equity Juris.*, sec. 153.

The terms of the lease and agreement fully and clearly set out the relations and mutual obligations of the con-tracting parties, in reference to the subject-matter of both contracts, and their execution was also admitted by the defendant; therefore neither the condition of the rented property, nor the refusal of the plaintiffs—even were such refusal proven—to do any act not called for by said con-tracts, or that was not an inevitable sequence therefrom, nor the non-user of the rented property by the defendant, are relevant facts, and were properly withheld from the jury. *Milburn vs. State*, 1 *Md.*, 1; 2 *Smith's Leading Cases*, 715.

The offer by the defendant of evidence of extension of the term of the original agreement for the privilege of purchasing the distillery property was properly refused, because by that agreement the limitation within which the defendant *could purchase* was one year from the 15th of February, 1871, "*and not afterwards.*" On the 16th of January, 1873, the plaintiffs entered into a second sealed agreement with the defendant, for the sale to him of the same property, in which "the right *to the amount of the rent and privilege is not waived.*"

The agreement offered in evidence by the defendant was an alleged parol agreement entered into on or about the last of July, 1873. The inhibiting clause of the original agreement was a positive limitation of the term for the user of the privilege granted, and is therefore of the essence of the contract. The second contract of the 16th of January, 1873, especially reserved the right of the plaintiffs to the amount of the rent and privilege. The third alleged contract of July, 1873, if proven, was a

mere oral agreement. This parol agreement therefore, even if proven, could not vary or contradict, or explain away, either the original sealed contract of the 15th of February, 1871, nor the sealed contract of the 16th of January, 1873, by the former of which the consideration of contract of rent and privilege was fixed, and by the latter renewing the agreement to sell the aforesaid distillery property, and reserving the right of the plaintiffs "to the said amount of rent and privilege." A "parol agreement cannot vary or contradict a sealed contract, especially if the contract has to do with land." *Hasbrouck vs. Tappen,* 15 *Johnson,* 200 ; 2 *Smith's Leading Cases,* 691, 707, 714, 715 ; *Parteriche vs. Powlet,* 2 *Atkyns,* 384.

The prayers of the defendant were properly refused, because there was no evidence of waiver by the plaintiffs of their rights under the contracts sued upon. On the contrary *the agreement offered in evidence by the defendant* of January 16th, 1873, especially reserved the rights of the plaintiffs. On the 15th day of February, 1872, the rights of the defendant under the contract of 15th February, 1871, was forfeited and his liability for the consideration of that contract was determined. At the same time, the right of the plaintiffs to the consideration of the contract, for the exclusive privilege of purchasing, matured, and their right to demand payment thereof, was established. The amount of the consideration and the conditions of payment of same, were fixed by the sealed agreement of the plaintiffs and defendant. Failure of demand for performance *alone* within the term of the statutory limitation was neither actual or constructive waiver of the contract. The agreement of 16th January, 1873, reserved and reiterated the rights of the plaintiffs, and by his own proof of his own act the defendant cannot deny them.

The prayers of the plaintiffs embody the true theory of the law of *liquidated damages,* applicable to the facts of

the case. *Fletcher vs. Dyche,* 2 *Term R.,* 36; *Smith vs. Smith,* 4 *Wend.,* 471; *Slosson vs. Beadle,* 7 *Johnson,* 72; 2 *Story's Equity Juris.,* 1318: *Hasbrouck vs. Tappen,* 15 *Johnson,* 200; 2 *Greenleaf's Ev.,* 259.

STEWART, J., delivered the opinion of the Court.

There are two agreements between the parties involved in the case. The one being the lease of the distillery and premises, at a specified rent; and the other, in regard to the offer to sell the same property, under which plaintiffs claim one thousand dollars for the privilege given to defendant to purchase the property within twelve months.

Three exceptions were taken by the defendant to the rulings of the Court. The first and second of which raise questions as to the admissibility of testimony, and the third excepting to the granting of plaintiffs' two prayers; and the rejection of the six prayers of the defendant.

The contract between the parties in regard to the claim of the plaintiffs of one thousand dollars, is a distinct agreement for the payment of that sum, for the privilege of purchasing the property; and involves no question of penalty or liquidated damages for its non-performance.

It is not a bargain and sale of the property at $5000, but a proposition and obligation on the part of the plaintiffs, to sell it to the defendant at that price with the privilege to him to make the purchase or not, as he may determine within the year.

For this option, which was a valuable privilege, he agrees to pay the $1000 in the event of his declining to make the purchase.

The defendant acquired the right under the contract, to purchase the property for the proposed price.

The plaintiffs had obligated themselves to sell at that price; but the defendant was under no obligation to buy. He merely bound himself to pay the $1000 for the privilege of buying, and in case he did not buy. It was entirely

optional with the defendant to purchase the property or
let it alone ; whilst the plaintiffs had abandoned the right
to make sale to any one else during the year.

That was a sufficient consideration for the defendant's
obligation. This we understand, to be the nature of the
contract between the parties as to this particular. There
is no ground for the theory, that the contract imported a
bargain and sale of the property, obligatory as such upon
the parties ; and that the thousand dollars was provided
as the penalty for its enforcement upon the defendant.

Such construction would make a different contract for
the parties, from what they have stipulated.

We find no error in the exclusion of the parol proof,
offered by the defendant in his first exception.

Such testimony was clearly inadmissible, in the face of
the written agreements of 16th January and 25th February,
1873, introduced as evidence by the defendant himself.

In the absence of these agreements, whether the proposed
testimony might be adduced to prove waiver, or extension
of the time, for performance of the original agreement,
notwithstanding the Statute of Frauds requiring the con-
tract as to the sale of lands to be in writing ; or the rule
of the common law disallowing parol testimony, to contra-
dict, add to, or vary the terms of the written contract, it is
unnecessary to decide.

There was error in the refusal of the testimony offered
by the defendant in the second exception.

The plaintiffs had rented to the defendant, the distillery
and premises for one year, at $125 per month.

According to the terms and provisions of the lease
between the parties, the property was rented to be used
and employed by the defendant, as a distillery ; the defen-
dant was to repair and improve the property, as he might
desire at his own expense, but all such improvements, fix-
tures and machinery put upon the distillery or premises
rented, to become the property of the plaintiffs at the ter-
mination of the lease, without cost to them.

The distillery could not be run and conducted by the defendant except in compliance with the Revenue Laws of the United States, applicable thereto.

This the parties must be presumed to have known. The plaintiffs having made the lease to the defendant for such purpose, must be considered as having entered into such contract subject to the provisions of the laws regulating that pursuit; and the contract between the parties is affected thereby.

Under the Internal Revenue Acts of Congress, (see *Revised Statutes, Title* 35, *sec.* 3262,) the bond of the defendant as a distiller, renting and not owning the property in fee, was not authorized to be approved, and he could not lawfully carry on the distillery, unless he filed with the collector the written consent of the plaintiffs as the owners of the property in fee.

The plaintiffs having rented their property for such purpose, if they refused to give their consent in writing to the defendant, as required by the law, preliminary to the use of the distillery, it would be unjust towards the defendant for them to undertake to exact rent for the premises, if they had failed to supply him with the necessary legal muniment, to enable him to carry on the business.

It is not to be intended that they designed that the defendant should make use of the distillery in violation of the law. The default of the plaintiffs in that particular, would amount to " constructive eviction," to all intent and purposes, so far as the legitimate employment of the property is concerned. *Taylor's Land. and Tenant, sec.* 380.

The obligation of the plaintiffs to give their consent as demanded by the law, must be implied as a necessary incident to the lease in question, as fully as if there had been a positive stipulation to that effect.

Although there was no express covenant for the legal employment of the property leased, as a distillery, it is a necessary implication from the circumstances and nature of the lease.

The payment of the rent is to be taken as the equivalent and consideration for the beneficial enjoyment of the premises as a distillery, so far as such consent could contribute to that result; and the lessors had no right to withhold it, and yet expect to be paid the stipulated rent; such act on their part was indispensable to the consummation of the lease between the parties.

They were as much bound, as the owners of the fee of the property, to give their written consent, as to allow the tenant to take possession of the distillery and premises, which although not mentioned, was an implied covenant affecting the lease.

This contract like any other must be expounded to give effect to the intention of the parties, according to the reasonable import of the terms of the instrument, the circumstances affecting it, the character of the property, the purposes for which it was leased, and the employment to which it was to be devoted.

The mutual obligations of the parties growing out of the contract, must be understood and defined with reference to all these considerations.

Where there are no express stipulations upon the subject, such facts furnish sufficient evidence, from which the agreement may be inferred between the parties, quite as controlling as positive stipulations.

Without the written consent of the lessors, the lease of the property as a distillery, would be a nugatory and incomplete act. See *Taylor's Landlord and Tenant, secs.* 244-245-247-252.

The lessors having instituted the action for the recovery of the rent, the tenant has the right to recoup damages, for any breach or non-performance of duty on their part, to the extent of the rent. *Taylor's Landlord and Tenant, secs.* 317-374-378.

Such being the view we take of the contract between the parties, and the rulings of the Court below, in the first

and second exceptions, there was error in the third exception, in the granting of the plaintiffs' first prayer, but their second prayer was properly granted, and the defendant's prayers refused.

*Judgment reversed, and*
*new trial ordered.*

(Decided 14th April, 1875.)

A motion for a rehearing of the foregoing case was made by the appellees on the 23rd of April, 1875. This motion the Court overruled, and at the same time filed the following opinion:

BARTOL, C. J.— The motion for a rehearing of this cause having been considered, it is hereby ordered that the same be overruled.

Upon a careful examination of the Acts of Congress to which we have been referred, we find no error in the opinion heretofore filed. The general expression therein, that the appellant " could not lawfully carry on the distillery, unless he filed with the collector the written consent of the plaintiffs as the owners of the property in fee, &c.," is substantially correct; for though the Act provides a mode by which the distillery might have been carried on, without the written consent of the appellees, yet this provision did not secure to him an absolute right which he could have exercised; but it was made entirely dependent upon the will and discretion of the Commissioner.

*Motion overruled.*

(Decided 24th June, 1875.)