SAUL ET AL. *v.* McINTYRE

[No. 88, October Term, 1947.]

*Decided February 20, 1948.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Benjamin L. Freeny,* with whom was *Milton H. F. Saul* on the brief, for the appellants.

*Herbert L. Grymes,* with whom was *Louis P. Bolgiano* on the brief, for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal by defendants from a decree, en- tered June 28, 1947, directing them, as owners, to "exe- cute with approval" an application of plaintiff (appel- lee) for renewal of her beer and wine license (which expired May 1, 1947) for the first floor and basement of No. 226 North Gay Street. Code, Supp. 1943, Art. 2B, sec. 13 (15).

The property 226 North Gay Street was acquired by Charles F. Klein and wife, as tenants by the entireties, before 1944 and was conveyed by them to defendants on January 22, 1947. In May, 1944, a lease of the first floor and basement from Klein to William R. Curry was executed under seal by Klein and Curry but was never acknowledged or recorded. Mrs. Klein was not men- tioned in the lease and did not sign it until after execu- tion of the deed to defendants and institution of this suit. The lease was to "commence on June 1, 1944, for a period of one year ending on May 31, 1945, with the right to the Tenant to renew the term of this lease as hereinafter provided." It provided, *inter alia,* "It is the intention of the parties hereto that the demised premises shall be used by the Tenant as a restaurant, and to that end it has been necessary under existing laws for the Tenant to make application to the local Ration Board of the Office of Price Administration for a sufficient allotment of foodstuffs with which to operate this restau- rant, and therefore both the Landlord and the Tenant hereby covenant and agree that in the event that the Office of Price Administration deny the required per- mission, or allotment, as the case may be, then this lease shall be null and void. * * * Upon the expiration of the first year term set forth in this Lease, the Tenant shall have the option of renewing this Lease for an addi- tional term of one year, under the same terms and con- ditions, and the Tenant shall continue to have this right of renewal for additional one year periods for a total of nine (9) years in addition to the original one year term of this Lease. This Lease shall renew itself auto-

matically from term to term for the said nine (9) option years unless the Tenant shall give at least 30 days written notice, to the Landlord, prior to the expiration of any term, of his intention not to exercise his option privilege, in which case the term of this Lease shall then terminate at the end of the said term then running."

On application on July 24, 1944 of Richard Brown (apparently an associate of Curry), assented to by Klein as owner, a beer and wine license was issued. Curry conducted a lunch room, with beers and light wines, on the premises. In April, 1945 he sold his business to plaintiff and assigned the lease. Klein, as "landlord", signed a consent to the assignment. The lease contained no covenant against assignment. Application in March, 1945 for renewal of the license, and transfer to plaintiff consummated in July, 1945, by Curry, and application for renewal in 1946 by plaintiff, were all assented to by Klein as owner. Defendants, after purchase from the Kleins, refused to assent to plaintiff's application for renewal in 1947. They gave notice to plaintiff on February 7, 1947 of termination of her "monthly tenancy" on April 1, 1947. Defendants' counsel wrote plaintiff's counsel that the lease was "entirely void" because it was a lease, from Klein only and not from Mrs. Klein. This suit to compel execution of assent followed on March 12, 1947.

When defendants were negotiating with Klein, through a broker, for the purchase of the property, a price of $5000 was agreed upon, and a contract of sale was prepared between Mr. and Mrs. Klein and defendant Saul, naming that price and containing a recital: "The property being subject at the present time to two leases First floor and basement now being rented at $40.00 per month, expiring on June 1st, 1947; Second floor under lease at $20.00 per month and which expires on June 1st, 1947." Defendants asked to see the lease; the lease dated May, 1944 was shown to them and read by both of them. The broker says the price was reduced to $4500 "on the strength of the fact that the lease was not

for one year but had extended clauses in it which carried it for some period of time". The recital was not changed, but the price was changed by interlineation, and the contract, dated November 20, 1946, was signed, under seal, by the Kleins and Saul.

Neither Mr. nor Mrs. Klein testified. At the argument it was stated that Mr. Klein was gravely ill, Mrs. Klein could not leave him, and plaintiff did not wish to postpone the hearing to take their depositions. Plaintiff testified that when she purchased Curry's business his beer and wine license was displayed in the window and after the purchase hers was likewise. Art. 2B, sec. 21. Plaintiff says Mrs. Klein visited the restaurant every week when she came down to see her husband at his place of business next door.

We may assume, as defendants contend, that the lease dated May, 1944, was "entirely void" (*cf. Krauss v. Litman*, 189 Md. 394, 56 A. 2d 37, 39, 40) ; also that if Klein had been sole owner, the written lease did not obligate him to assent to applications for beer and wine licenses. "Restaurant" does not necessarily mean a beer and wine restaurant. The fact is, however, that from July, 1944 until June 1, 1947 first Curry and then plaintiff occupied the premises as tenant, paid rent and conducted a beer and wine restaurant, Klein as "owner" assented to all license applications, Mrs. Klein must have known, and defendants when they bought were charged with knowledge, that plaintiff was conducting a beer and wine restaurant, and on November 20, 1946 in the contract of sale both Mr. and Mrs. Klein and defendant Saul in writing, under seal, recognized an existing "lease", and in effect the Kleins paid defendants $500 because of the existence of the lease. It is common knowledge that a beer and wine restaurant is economically a different thing from a restaurant without any alcoholic beverage license. If the written lease was void, the existing lease necessarily was an oral lease.

We think the "lease" recognized on November 20, 1946 was not the void lease of May, 1944 that never

existed, but the actual tenancy that existed on November 20, 1946. The terms of that tenancy may be evidenced by the void lease of May, 1944 (*cf. Gostin v. Needle*, 185 Md. 634, 637, 45 A. 2d 772, 163 A. L. R. 1013; *Falck v. Barlow*, 110 Md. 159, 162-163, 72 A. 678, 17 Ann. Cas. 538), and continuous use, by plaintiff and her predecessor, of the premises as a beer and wine restaurant, which required the owner's assent to all licenses. Conduct of the parties to a written contract not only may amount to construction of ambiguous provisions but may evidence subsequent modification of the contract. *Williston on Contracts*, Revised Ed., sec. 623. A *fortiori*, an oral lease may be construed or modified by conduct, especially if it is subsequently recognized in writing under seal. We think on November 20, 1946 one of the terms of the existing tenancy was that the premises might be used as a beer and wine restaurant, with the necessary license assents by the owners. Just when this became a term of the tenancy is for present purposes not material. It may have been originally an understanding between the parties, omitted by mutual mistakes in the May, 1944 lease. It may have been a collateral or subsequent understanding between Klein and Curry in or soon after May, 1944. From July, 1944 to November 20, 1946 it was a term of the actual tenancy which was maintained by the conduct of the lessors and lessee and was recognized, and paid for, in the contract of sale.

*Grabenhorst v. Nicodemus*, 42 Md. 236, 247, 248, was a suit for rent under a lease of property to be used as a distillery. Under acts of Congress the defendant could not lawfully carry on the distillery, unless he filed the written consent of the plaintiffs as owners. The court said: "The obligation of the plaintiffs to give their consent as demanded by the law, must be implied as a necessary incident to the lease in question, as fully as if there had been a positive stipulation to that effect. Although there was no express covenant for the legal employment of the property leased, as a distillery, it is a necessary

implication from the circumstances and nature of the lease. The payment of the rent is to be taken as the equivalent and consideration for the beneficial enjoyment of the premises as a distillery, so far as such consent could contribute to that result; and the lessors had no right to withhold it, and yet expect to be paid the stipulated rent; such act on their part was indispensable to the consummation of the lease between the parties. They were as much bound, as the owners of the fee of the property, to give their written consent, as to allow the tenant to take possession of the distillery and premises, which although not mentioned, was an implied covenant affecting the lease. This contract like any other must be expounded to give effect to the intention of the parties, according to the reasonable import of the terms of the instrument, the circumstances affecting it, the character of the property, the purposes for which it was leased, and the employment to which it was to be devoted. The mutual obligations of the parties growing out of the contract, must be understood and defined with reference to all these considerations. Where there are no express stipulations upon the subject, such facts furnish sufficient evidence, from which the agreement may be inferred between the parties, quite as controlling as positive stipulations." 42 Md. 248, 249. See also *Standard Brewing Co. v. Weil,* 129 Md. 487, 491, 99 A. 661, L. R. A. 1917C, 929, Ann. Cas. 1918D, 1143.

Whether (1) the clauses of the May, 1944 lease for (*a*) nine successive renewals and (*b*) automatic renewals, or either of them, are terms of the existing tenancy and (2) if so, either or both are (*a*) valid at law, under the recording laws and the Statute of Frauds (*Sweeney v. Hagerstown Trust Co.,* 144 Md. 612, 125 A. 522; *Schultz v. Kaplan,* 189 Md. 402, 56 A. 2d 17) or (*b*) if not valid at law, are specifically enforceable in equity as a contract to lease (*King v. Kaiser,* 126 Md. 213, 94 A. 780; *Thompson v. Thomas & Thompson Co.,* 132 Md. 483, 104 A. 49; *Schultz v. Kaplan, supra; Gray v. Spyer,* [1922] 2 Ch. 22), are questions not now before us. If

plaintiff is not in possession under successive renewals of a one year term, we think she is at least a tenant from year to year, not a monthly tenant, *i. e.*, in the circumstances the May, 1944 lease is sufficient evidence of "the periodical payment by the tenant of a yearly rent, * * * in * * * instalments, accepted by the landlord, [which] makes the tenancy one from year to year". *Falck v. Barlow, supra,* 164; *Cook v. Boehl,* 188 Md. 581, 53 A. 2d 555, 560.

*Decree affirmed, with costs.*

COLLINS, J., filed the following dissenting opinion:

This is a suit for specific performance. The bill asks that the defendants be directed to execute the approval of the application for the renewal of the beer and wine license during the continuance of the tenancy under the lease. Nowhere in the written lease or in any oral lease is there any mention of the sale of wine or beer in the restaurant. It has been consistently held by this Court that specific performance of a contract will not be decreed unless it is clear, unambiguous, and certain in all its parts and is fair and mutual. *Gelston v. Sigmund,* 27 Md. 334, 343; *Anshe Sheppard Congregation v. Weisblatt,* 170 Md. 390, 185 A. 107; *Trotter v. Lewis,* 185 Md. 528, 45 A. 2d 329; *Naughton v. Clubb,* 188 Md. 374, 52 A. 2d 739, 740; *Smith v. Biddle,* 188 Md. 315, 52 A. 2d 473, 475; *Moran v. Hammersla,* 188 Md. 378, 52 A. 2d 727. To specifically enforce any such provision, read into the leases either written or oral in this case, an intention or undertaking on the part of the lessors or their assigns to sign an application for a beer and wine license, whenever requested by the lessees or their assigns, would be contrary to the former decisions of this Court, in the opinion of the writer. This is not a suit for rent as in *Grabenhorst v. Nicodemus,* 42 Md. 236, 247, 248, relied on in the majority opinion. If the appellants here had requested the appellee to continue the sale of beer and wine in order to maintain that privilege in the restaurant and the appellee in this case had refused, I do not believe

under the lease or leases here this Court would have compelled the appellee by specific performance to take out a new beer and wine license. Therefore the provision read into the lease or leases is not so mutual and fair as to justify specific performance. I think the decree of specific performance should be reversed in this case.