**WELSH HOMES, INCORPORATED,**
Petitioner and Cross-Respondent,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent and Cross-Petitioner.

No. 8052.

United States Court of Appeals
Fourth Circuit.

Argued April 27, 1960.

Decided May 30, 1960.

392

Mason G. Kassel, New York City, and
Walter C. Mylander, Jr., Baltimore, Md.
(Harry J. Rudick, New York City, William B. Davidson, Baltimore, Md., and
David R. Frazer, Washington, D. C., on

the brief), for petitioner and cross-respondent.

Karl Schmeidler, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent and cross-petitioner.

Before SOPER, HAYNSWORTH and BOREMAN, Circuit Judges.

SOPER, Circuit Judge.

This petition for review is directed to a decision of the Tax Court which approved the Commissioner's computation of the taxable gain derived by a builder upon the sale of leasehold interests in land upon which he had erected buildings under the ground rent system in vogue in Baltimore, Maryland, described in our decision in Commissioner of Internal Revenue v. Simmers' Estate, 4 Cir., 231 F.2d 909. The facts in the pending case are on all fours with those in Simmers', wherein the decision of the Tax Court was affirmed. The decision of the Tax Court in the pending case reaffirms the general principle there laid down but computes the gain derived by the builder corporation in the transactions upon a different formula and substantially increases its tax obligations.

The taxpayer's operations are described in the following passage from the Simmers' case, 4 Cir., 231 F.2d 910:

"The taxpayer acquired unimproved land, divided it into lots and built a dwelling house on each lot. When the houses on a group of lots were completed the taxpayer first created ground rents on the lots by entering into an agreement of lease with a wholly owned or straw corporation, as lessee, covering the lots and improvements thereon for a term of ninety-nine years, renewable forever, at a specified rental on each lot. Subsequently, upon the sale of a house, the taxpayer caused the straw corporation to assign to the purchaser the lease on the premises sold. This course was followed because under the Maryland law the original lessee of the lot is liable for the payment of the ground rent during the entire term of the lease, but an assignee of the lessee is liable for the rent only during the period of his tenancy."

Since the ground rent or reversionary interest in each lot is readily salable the Commissioner contended in the Tax Court in the earlier case and in the pending case that the creation of a ground rent and the sale of the leasehold interest to the purchaser amount to a disposition or sale of the whole property and therefore the taxable gain from the transaction is the excess of the cash received from the purchaser plus the market value of the ground rent over the cost of the land and the building thereon. We rejected this contention in affirming the Tax Court in the Simmers' case, since the purchaser of the leasehold interest can not be compelled to redeem the ground rent and hence the builder does not realize a taxable gain on the reserved ground rent until it is sold or redeemed by the lessee. On the strength of the Simmers' case the Commissioner's contention was again rejected by the Tax Court in the pending case and is now rejected by us for the reasons given in our earlier decision.

There is however, a substantial difference between the two cases in the computation of the tax. In Simmers', after the principle had been established, the computation was agreed upon and its correctness was not questioned in the Tax Court or in this court on appeal. The taxable gain was arrived at by deducting the aggregate cost of building the houses from the aggregate selling price of the leasehold interests. In the present case a different method of computation was proposed by the Commissioner [1] and approved by the Tax Court and is now in issue here. It is based on

[1]. The new method of computation was first suggested in a Note by Ronald M. Smullian, published in 1957, in 17 Md. L.R. 241.

the theory that in the transfer of a leasehold interest the purchaser acquires and the builder retains an interest in both the lot and the building; and since the leasehold interest has been carved out of the whole and its cost cannot be definitely shown, it must be ascertained by allocating the entire cost between the interest sold and the interest retained. For this purpose the ratio of the value of the leasehold to the aggregate value of the leasehold and the reversionary interest is first ascertained and then the ratio is applied to the aggregate cost of the land and the building. The result obtained represents the cost basis of the leasehold. Assume, for example, that a purchaser pays $12,000 for the leasehold interest in a lot improved by a dwelling subject to an annual ground rent of $120.00, which is capitalized under the Maryland law at 6 per cent and therefore has a value of at least $2,000. In such case the value of the whole property is $14,000. Assume, also, that the cost of the land was $500.00 and the cost of the house $10,000, or a total of $10,500. The ratio of the value of the leasehold to the value of the whole property is therefore twelve-fourteenths, and if this ratio is applied to the total outlay, the cost of the leasehold is found to be $9,000 and the taxable gain to be $3,000. If, on the other hand, the agreed upon calculation in the Simmers' case is applied, the taxable gain in this transaction would be the difference between the purchase price of $12,000 and $10,000, the cost of the building, or $2,000.[2]

The objection of the taxpayer to the computation now approved by the Tax Court is based principally, if not entirely, upon the broad proposition that the lessee has absolute ownership of the house for all purposes subject only to the payment of the ground rent and has no ownership in the land except the right to use it upon payment of the rent; and that the lessor owns the land and has no interest in the house except as additional security for the payment of the ground rent. The Maryland decisions, however, do not support this proposition, as we pointed out in Simmers'. For example, it was held in Moran v. Hammersla, 188 Md. 378, 381–382, 52 A.2d 727, that although the estate of the lessee is considered personal property, in practical effect the relation of the lessee to the property is that of owner of the land and improvements thereon subject to the payment of the annual rent and all taxes on the property. The ninety-nine year lease under which the ground rent is created expressly provides that the lessor leases the land to the lessee, his successors and assigns, together with the improvements thereon.

The matter is summed up correctly in the opinion of Judge Fisher of the Tax Court in these words (32 T.C. 253):

2. The substantial difference in results obtained by the two methods of computation is shown by the following tables in which the proceeds of sale of the taxpayer for the tax years 1952, 1953 and 1954 are set out:

Taxpayer's Computation

|  | 1952 | 1953 | 1954 |
|---|---|---|---|
| Sales Proceeds (leasehold value) | $ 5,668,826.74 | $ 3,750,856.11 | $ 2,801,517.97 |
| Cost of Improvements | −5,035,956.29 | −3,566,779.60 | −2,649,120.25 |
| Taxable Gain | $ 632,870.45 | $ 184,076.51 | $ 152,397.72 |

Commissioner's Computation

|  | 1952 | 1953 | 1954 |
|---|---|---|---|
| Sales Proceeds (leasehold value) | $ 5,668,826.74 | $ 3,750,856.11 | $ 2,801,517.97 |
| Cost of Leaseholds Sold | −4,754,172.03 | −3,227,222.13 | −2,432,175.27 |
| Taxable Gain | $ 914,654.71 | $ 523,633.98 | $ 369,342.70 |

"Upon the creation of the ground rent, there are two interests in the property; the reversion, owned by the grantor, and the leasehold, owned by the purchaser. Ogle v. Reynolds, 75 Md. 145, 23 Atl. 137 (1891); Moran v. Hammersla, 188 Md. 378, 52 Atl.2d 727 (1947); Kolker v. Biggs, 203 Md. 137, 99 Atl.2d 743 (1953). The purchaser has, in reality, a dual standing; he is the owner of the leasehold interest in the property and he is the lessee of the reversionary interest. The grantor is the owner of the fee and the lessor of the reversionary interest."

This statement is not inconsistent with rulings of the Maryland court that the lessee has no obligation to keep the property in repair, Kirby v. Wylie, 108 Md. 501, 512, 70 A. 213, 21 L.R.A.,N.S., 129; Miller v. Howard, 206 Md. 148, 110 A.2d 683; Gluck v. City of Baltimore, 81 Md. 315, 323, 326, 32 A. 515; or to abstain from waste or injury unless the security for the annual payment of the ground rent is impaired thereby. Whiting-Middleton Const. Co. v. Preston, 121 Md. 210, 88 A. 110. The limitations upon the ordinary obligations of the lessee of real estate indicated by these decisions do not show that the lessee of property subject to a ground rent has no interest in the land or that the lessor has no interest in the improvements.

Allocation of costs is normally employed for the establishment of a cost basis of property when a taxpayer acquires an aggregate of assets for a single unallocated purchase price and subsequently sells a portion of the whole. 3 Mertens, Law of Federal Income Taxation, § 21.23. The pending case presents the reverse of the situation. The cost of the land and the cost of the building, the constituent elements of the property which the builder has acquired are known, but in the building operation they have been incorporated into a single property and when a part interest in the whole—the leasehold—is granted to the lessee and the reversionary interest or, ground rent is retained by the lessor, it is impossible to ascertain what part of the value of these interests is attributable to the land and what part to the building. It follows that the cost of land and building must be allocated between the interest granted and the interest retained. The taxpayer's contention that the allocation of costs is not necessary must be rejected since it is based on the mistaken notion that the purchaser of the leasehold acquires an interest in the building but no interest in the land. In various types of situations, more or less analogous to that in the pending case, the allocation of costs or expenses has been approved when it is the only practicable method of reaching a fair and equitable result. Central Cuba Sugar Co. v. Commissioner, 2 Cir., 198 F.2d 214, certiorari denied 344 U.S. 874, 73 S.Ct. 167, 97 L.Ed. 677; F. A. Gillespie & Sons Co. v. Commissioner, 10 Cir., 154 F.2d 913, 917; Columbia Oil & Gas Co. v. Commissioner, 5 Cir., 118 F.2d 459. In our opinion the costs were properly allocated in computing the taxable gain in the instant suit.

The taxpayer makes the additional procedural point that the Commissioner introduced a new issue in the case when he submitted a computation of the tax based on an allocation of the cost of the leasehold in the course of the Rule 50, 26 U.S.C.A. (I.R.C.1954) § 7453, proceeding.[3] The opinion of the Tax Court adhered to the position it had taken in the Simmers' case, that no taxable gain had been realized by the taxpayer upon the reversionary interest, and directed the decision to be entered under Rule 50. Subsequently the Commissioner filed

---

**3.** Rule 50(c)—"*Limits on argument under this rule.* Any argument under this rule will be confined strictly to the consideration of the correct computation of the deficiency or overpayment resulting from the report already made, and no argument will be heard upon or consideration given to the issues or matters already disposed of by such report or of any new issues. This rule is not to be regarded as affording an opportunity for retrial or reconsideration."

a computation of the tax wherein he ascertained the cost basis of the leasehold interest on the allocation theory, to which the taxpayer objected. In due course a hearing was had and in the course of an extended argument the procedural point was made and much of the ground on the merits of the case at the original hearing was retraced. The judge reached the conclusion that the Commissioner's computation correctly interpreted and implemented his decision and gave further time to the taxpayer to check the accuracy of the Commissioner's computation before the final decision was entered.

■■ We find no error in this course of action. It is true that the cost basis of the leasehold was arrived at on a different theory than had been applied in the Simmers' case where the computation was agreed upon without contest; but the computation in the pending case was based entirely upon the admitted facts that were before the court on the first hearing, no new evidence was needed and the taxpayer was given full opportunity to be heard. It was incumbent upon the Commissioner in performing his duty to present a computation, under Rule 50, to calculate the cost of the leasehold from the facts before the court in accordance with the court's opinion and the only issue, which is present in every Rule 50 hearing, was whether the Commissioner had done so correctly. On this issue the taxpayer had full opportunity to be heard and to cite the prior decision in the Simmers' case.

There is no conflict here with the decision in Bankers Pocahontas Coal Co. v. Burnett, 287 U.S. 308, 313, 53 S.Ct. 150, 77 L.Ed. 325, that the Tax Court did not abuse its discretion in refusing to reopen the case in a Rule 50 hearing in order to receive evidence that was available in time to be presented to the court before it rendered its decision, or with the decision in Commissioner of Internal Revenue v. Superior Yarn Mills, 4 Cir., 228 F.2d 736, where it was held that issues not presented at the trial may not be injected at the Rule 50 hearing. It

has been held entirely proper to sustain a decision of the Tax Court on appeal on a new theory when no new facts not already of record are required for the decision. Helvering v. Gowran, 302 U.S. 238, 248, 58 S.Ct. 154, 82 L.Ed. 224; Anderson v. Commissioner, 2 Cir., 156 F.2d 591, 593; Alexander Sprunt & Son v. Commissioner, 4 Cir., 64 F.2d 424, 427; and in exceptional cases questions not raised below may be considered on appeal and the case remanded for the taking of additional evidence. Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 85 L.Ed. 1037. We find no denial of due process to the taxpayer in the course of the trial below. · · ·

Affirmed.